Good morning, Mr. McLaughlin. We reserve one minute for rebuttal. You can begin whenever you're ready. Thank you. Good morning, Your Honors. Devin McLaughlin on behalf of Appellant Defendant Reshfa Massarone, we are challenging the substantive reasonableness of our 114-month sentence for the murder for a higher conviction. As the District Court Judge Seibel in her own words found the victim's conduct was reprehensible, disturbing, awful, persistent, unhealthy, harassing. The victim had a very weird, unexplained, unhealthy interest in harassing Ms. Massarone. Victim engaged in systemic campaign of making the defendant miserable. Despite all of that, there was... It's pretty clear. I mean, you don't take matters into your own hands just because you've been harassed. There's a procedure, there are procedures to follow other than killing a person or trying to have the person killed. Absolutely agree, Your Honor. And have never made an argument to the contrary. It does not excuse the murder for higher. It does not excuse the murder for lower. It does                 not excuse the murder for higher. And I respectfully submit that that is a misreading of what the judge did. When you look at the transcript of the judge's pronouncement of her sentence, she certainly spends a lot of time talking about mitigating and aggravating factors, but when she's announcing her sentence, I think the fairest reading, respectfully, is that I'm going to give you credit for not taking this to trial. For pleading guilty, I'm going to give you some credit. She mentioned that twice intercolloquially. I don't think that's a fair reading. I mean, first of all, she explicitly said, I'm taking into account that on a preponderance of the evidence the victim harassed her client. You quoted it. She then said, but it's only a slightly mitigating thing, not very much, because as Judge Walker pointed out, she said it was what she did. Murder is not the answer. It's wildly disproportionate to the provocation. And then later when there was a discussion of the pleading guilty, she did note she was giving credit for pleading guilty, but I don't think you can read that to say that she forgot that she was considering the harassment, too. She just decided that 114, nine years, even with the victim's harassment and even with the pleading guilty, if you're balancing out the other factors, the seriousness was the right sentence. In fact, she said, I agree with probation's recommendation. I went back and looked at their recommendation, and they specifically said their recommendation of 114 is based upon the harassment by the victim and a host of other mitigating factors. So she referenced the recommendation that was considering that as well. The 114 that she picked was based upon, in part, the harassment. And so, Your Honor, my honest read of the transcript, and obviously, if reasonable minds can differ, then I'm going to lose on this one, but 114 months, you've got 120-month sentence. You're giving six months off. You're giving six months for not taking to trial and for pleading guilty. That sounds like a credit to me, and it's the language that she used, which is, I'm going to give you something. And she said it right before she announced the sentence, and I do believe a fair reading of it, is, I'm going to give you six months, which is not a lot of time off for not having taken to trial. Maybe she thought that, but for the statutory maximum, the murder for hire would be even more than 10 years, in her mind. Maybe she thought, you know, this is so serious, a murder for hire, I would have given 15 years for this, but because of the harassment and the credit, I'm going to give 114. So if I could respond to that. So the statutory maximum for murder for hire is 120. So the worst murder for hire is 120. That's what it has to be. That's what Congress said. It's going to be 120. And our position is that the systemic harassment if she, from my perspective in reading this, of the transcript, she got the same sentence that she would have gotten if the victim had been a complete innocent. And the victim was not a complete innocent, and everybody agrees they're not a complete innocent. And my reading of the transcript is that she gave him – Why can't we consider that, she says, I agree with probation's recommendation. Probation's recommendation of 114, which she chose, includes the harassment by the victim. Why can't we consider that to show that she was considering it, in addition to what she said? Right. It's a question of reading the transcript, and my reading of it, when I read it the first time, the seventh time, and the hundredth time, is that I'm giving you credit for not going ahead and taking this to trial. In six months, it's not a lot of time. I don't know how that feels like the credit to me, Your Honor. And that's our position, that there was – I guess the flip side is, the additional argument is that, okay, let's say that I've given you credit for pleading guilty, and I'm giving you something for mitigating and or some other combination of things. Our position is still, given the magnitude of the harassment and what she had to endure and the fact that it was a but-for cause for the crime, it would still be our position that that was not a sufficient amount to go ahead and allow for the sentence to stand. All right. Thank you. All right. Thank you, Mr. Hoffman. We'll hear from the government. Mr. Hoffman. May it please the Court, Jared Hoffman for the United States. I represent the government on appeal, and I represent the government in the district court below. I think, Judge Bianco, that you've hit on exactly the right passages from the sentencing transcript. I think when a district court explicitly states, I take into account that, based at least on a preponderance of the evidence before me, the victim did undertake what sounds like a systematic campaign of making Masseron miserable, that the fair reading is that Judge Seibel did consider the provocation of the victim as mitigation. Masseron may disagree with how Judge Seibel weighed the aggravating and mitigating factors in this case, but there were a lot of aggravating factors under the 3553A factors. She actually wired the money to pay for a murder. She repeatedly pressed for it to happen. She proposed rat poison as a good option. She proposed additional killings after the hitman took care of Masseron's mother-in-law. And so Judge Seibel found that, on balance, the aggravating factors outweighed the mitigating factors. Again, she may disagree with how the Court weighed the aggravating and mitigating factors, but that balancing act is a matter firmly committed to the discretion of the sentencing court. Unless the Court has any questions, the government is otherwise happy to rest on its submissions. All right. Thank you. Thank you, Mr. Hoffman. All right. Mr. McLaughlin, you have one minute in rebuttal. Thank you, Your Honor. Just briefly, because it's important to my client, I do want to point out, as I pointed out in my reply brief, the fact that the district judge appears to have, in finding that my client, Reshma, gave it as good as she could take it, relied on a lengthy text quote. The government quoted it in its brief on page, sorry, on page 10 to 11, and also reemphasized it on page 21. It does not appear that that quote was from my client, that text was from my client. In fact, it was from the victim's daughter to my client, as consistent with the gender use. And I don't think the government would dispute that. So I need to point that out. And there was also confusion about whether, in fact, there was an intent by my client to follow up with a murder of the victim's daughter that was directly contradicted by the record. I know, but there was, I saw that, but there was, there was no objection to this. In the PSR, it notes that the client said, as a next person, and the individual one responded, he would deal with one at a time, and there was another reference for other jobs. So there was, whether it's the daughter or not, I don't know that that's the most significant. The fact that she was thinking about other murders, I think, is the point, right? Which is why we didn't bring it up as procedural error as part of the argument. But it is, it does appear that Judge Seibel got that part wrong in terms of the daughter. And I don't know whether she attached particular significance to the daughter, other than the fact that she continued to repeat it. All right. Thank you. All right, thank you both. We'll reserve the decision and have a good day.